Filed 8/10/22 P. v. Lozano CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094245 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F00498) |
| v. | |
| ANTHONY DAVID LOZANO, | |
| Defendant and Appellant. | |

After over 11 years housed in a state hospital pending trial, the trial court found defendant Anthony David Lozano was a sexually violent predator (SVP) and civilly committed him. Defendant appeals this commitment contending the trial court abused its discretion by: (1) denying his *Marsden*[1] motions; and (2) denying his motion for a continuance to file a motion for dismissal based on a violation of his due process right to

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

1

a timely trial. We find no error in the denial of the *Marsden* motions. As to the motion for continuance, we agree that the trial court erred. We will conditionally reverse and remand the matter for a hearing on the motion to dismiss.

LEGAL BACKGROUND

Resolution of the issues in this case requires consideration of an SVP detainee's due process right to a timely trial. Between 2008 and 2020, California courts published a number of cases delineating that due process right. Understanding the framework of those cases, and their chronology, is helpful in understanding the factual background and legal analysis of this case; thus, we set forth that history first.

"Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections. (*Foucha v. Louisiana* (1992) 504 U.S. 71, 80.)" (*People v. Otto* (2001) 26 Cal.4th 200, 209.) In SVP proceedings, after a finding of probable cause on the commitment petition, the alleged SVP is detained pending trial. (Welf. & Inst. Code,[2] §§ 6601, 6602, subd. (a); *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 906.) An SVP detainee's due process rights are also entitled to protection during this period of pretrial deprivation of liberty. (*People v. Litmon* (2008) 162 Cal.App.4th 383, 399, 406.)

In April 2008, *Litmon* held that for an alleged SVP detained prior to trial, those due process protections included a right to a timely trial. (*People v. Litmon, supra*, 162 Cal.App.4th at p. 399.) In applying the right to a timely trial to SVP detainees, *Litmon* used the analytical framework of both *Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [court balances three factors: private interest, value of other procedural safeguards, and government interest] and *Barker v. Wingo* (1972) 407 U.S. 514, 533 [court weighs four factors: length of delay; reason for delay; defendant's assertion of his right; and

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

2

prejudice to defendant from the delay] (*Litmon*, at pp. 399-405, 405-407) to assess whether pretrial delays violated the fundamental requirements of due process. *Litmon* concluded under both due process analyses, the SVP trial must occur prior to the commencement of the SVP civil commitment term. (*Id.* at p. 401.) *Litmon* held when an alleged SVP is civilly committed after a probable cause hearing, a lengthy pretrial delay is oppressive and prejudicial to defendant. (*Id.* at pp. 405-406.) *Litmon* also charged the state with responsibility for issues such as "chronic, systematic postdeprivation delays in SVP cases that only the government can rectify," and postcommitment "delays due to the unwillingness or inability of the government to dedicate the resources necessary to ensure a prompt SVPA [Sexually Violent Predator Act] trial." (*Id.* at p. 403.) The court also stated: "[P]ostdeprivation pretrial delays in SVPA proceedings cannot be routinely excused by systemic problems, such as understaffed public prosecutor or public defender offices facing heavy caseloads, underdeveloped expert witness pools, or insufficient judges or facilities to handle overcrowded trial dockets." (*Ibid.*, fn. omitted.) *Litmon* concluded the ultimate responsibility for bringing the person to trial in a meaningful time rests with the government, and the remedy for excessive pretrial delays is to dismiss the commitment petition. (*Id.* at pp. 399-406.)

Approximately five years later, the Court of Appeal in *People v. Landau* (2013) 214 Cal.App.4th 1 distinguished *Litmon* and concluded that more than seven years of pretrial delay did not violate an SVP detainee's due process rights, where the vast majority of delays were at the defendant's request or with his consent and the unconsented to period of delay was relatively short (*id.* at pp. 27, 37-38). While *Landau* acknowledged the principle that the court and district attorney bear ultimate responsibility for providing a timely trial (*id.* at p. 41), it concluded that principle did not mean an SVP detainee could seek to continue trial repeatedly and then complain that the court violated due process by granting his requests (*id.* at p. 37).

3

Another five years later, in September 2018, *People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36 held a 17-year pretrial delay violated an SVP detainee's due process right to a timely trial. *Vasquez* noted the general rule that delays caused by defense counsel that are not caused by a systemic breakdown are properly attributed to the defendant, even when counsel is assigned (*id.* at p. 70). Accordingly, *Vasquez* attributed the first 14 years of delay to the defendant. (*Ibid.*) However, the remaining period of delay was caused largely by underfunding of, and dramatic staffing cuts at, the public defender's office. Those delays were attributable to the state. (*Id.* at pp. 71-72.) In addition, the trial court shared some responsibility for the delays, as it was required to find good cause to support continuances and take meaningful action to control the proceedings and protect the defendant's rights. (*Id.* at pp. 74-75.) Thus, where the trial court did not meet those obligations, the delays were also attributable to the state. (*Id.* at p. 74.) *Vasquez* also rejected the claim that the proper remedy was to order the matter to trial, distinguishing cases in which an SVP recommitment proceeding was not brought to trial before the expiration of the initial commitment and those in which the delay in proceeding to trial was a due process violation.[3] Instead, *Vasquez* confirmed the proper remedy for a violation of the defendant's due process right to a timely trial is a dismissal of the petition. (*Vasquez*, at pp. 82-83.)

Finally, in October 2020, the court in *In re Butler* (2020) 55 Cal.App.5th 614 agreed with *Vasquez* and *Litmon*, that an SVP detainee has a due process right to a timely trial (*id.* at p. 666). *Butler* also agreed with *Vasquez* and *Litmon* that the prosecution, defense, and trial court shared responsibility for protecting the defendant's due process

---

[3]    Prior to 2006, the SVPA provided for a two-year initial commitment, and subsequent extensions of that commitment. In 2006, the SVPA was amended to provide for an indeterminate commitment term instead of a two-year commitment. (*People v. Litmon*, *supra*, 162 Cal.App.4th at pp. 408-409.)

4

rights and bringing the matter to trial. (*Id.* at pp. 641, 653-656, 682-683, 660-661.) However, *Butler* rejected the claim that where responsibility for delay overlapped between defense counsel and the state, the delay had to necessarily be attributed to the defendant. Instead, *Butler* concluded these delays would have diminished weight against the defendant given the fact that the public defender had ignored the defendant's demands for a timely trial and waived time without the defendant's authorization. Accordingly, *Butler* concluded where state actors and defendant were responsible for that same period of delay, the ultimate obligation to bring an alleged SVP to trial in a meaningful time falls on the state (even where the SVP might prefer delay) and justifies charging the state with more responsibility for the delay. (*Id.* at pp. 662-664.)

## FACTUAL AND PROCEDURAL BACKGROUND[4]

In June 2009, following his conviction for assault with intent to commit rape, the prosecution filed a petition to civilly commit defendant as an SVP. In November 2009, the trial court found probable cause that defendant was an SVP and ordered him detained at a secure facility pending trial on the SVP commitment petition.

Over the course of the next 11 years, the trial court granted approximately 80 continuances of the SVP proceedings. Approximately 60 of these continuances were granted between November 2009 and August 2018, for a variety of reasons including: obtaining defense psychiatric evaluations, replacement evaluators and updated evaluations, including after one expert passed away; verifying reports were current and accurate; obtaining updated records and reports from the state hospital and experts; obtaining further defense investigative reports; conflicts in defense counsel's schedule; reviewing new materials from the prosecution and permitting the defense expert time to review those materials; allowing defendant to continue and progress in institutional

---

[4]    The substantive facts underlying defendant's conviction are not relevant to any issue raised on appeal and are therefore, not recounted here.

programming and obtaining updated reports from the institution; defendant's violent conduct within the institution resulting in additional criminal proceedings; and obtaining updated reports regarding defendant's institutional conduct, rules violations, and the resolution of resulting criminal charges. Approximately 15 of these continuances were granted with no reason stated. Defendant's appearance was waived at most of these hearings. As to two of the hearings, one in 2012 and one in 2018, it appears defendant requested the continuances to allow him to continue institutional programming. In July 2018, the People reported defendant did not want to go to trial. Also in July 2018, the parties agreed there was no need for a time waiver as defendant had made no request for a speedy trial.

Between August 2018 and March 2021, the trial court granted approximately 20 more continuances.

In August 2018, the matter was continued because defendant refused to meet with counsel. Defense counsel indicated he was going to prepare for trial. In October 2018, the matter was continued as the People had requested an updated evaluation, and defense counsel was determining whether to hire an expert or set the matter for trial.

Following that October 2018 hearing, defendant wrote to counsel, requesting counsel set the matter for trial.[5] Counsel responded stating he was willing to set the matter for trial, noting defendant had refused to meet with him the last two times he attempted to visit, and recommending against setting the matter for trial without defendant first meeting with counsel or the defense investigator.

---

[5] This letter from defendant is not contained in the record on appeal, but is referenced in an October 19, 2018 letter from counsel to defendant. The letter from counsel is included in materials sent to the trial court by defendant attached to his August 19, 2019 "Notice of Actual Conflict."

Between October 2018 and August 2019, the matter was continued primarily for reasons involving expert evaluations, including: defense counsel needed time to assess the People's updated expert evaluations and determine if a new defense evaluation was needed; the defense expert needed additional time to prepare a report, as the previous expert had resigned because of pay issues; and the People needed updated reports from their expert. Complicating defense counsel's ability to obtain timely expert reports, was the fact that there were only three defense experts in the state, and they were very busy.

On August 8, 2019, defendant again wrote to defense counsel, stating he intended to move for a hearing to address an alleged conflict of interest between himself and counsel. He asserted counsel had failed to move his case forward in a timely manner and he wanted new counsel for purposes of bringing a motion to dismiss, in part based on counsel's incompetent representation. Counsel responded that defendant's case would go to trial at the next available opportunity. Counsel also distinguished defendant's case from others in which a dismissal was appropriate, based on the fact defendant had "asked for multiple continuances given numerous behavior and legal issues" defendant had had in the state hospital.

Between September 2019 and January 2020, the trial court granted a number of additional continuances, for reasons such as defense counsel's scheduling conflicts and attendant inability to review the updated defense expert's report with defendant, the People's entitlement to discovery of that updated defense report, and defense counsel's continued inability to meet with defendant. One continuance was granted with no reason given.

At the January 23, 2020 hearing, counsel moved to set the matter for trial on April 30, 2020. Defendant was present via video conference and stated he wanted to declare a conflict with counsel and wanted independent counsel to file a motion concerning *Vasquez* issues. The People noted a number of patients at the state hospital had been attempting to make such motions, and suggested the matter be set for a *Marsden*

7

hearing. Since defendant would have to be present in court for that hearing, the *Marsden* motion was set on February 20, 2020, and a trial date of April 30, 2020. Defendant was not produced for the February 20 *Marsden* hearing based on an administrative error, and the hearing was reset for March 13, 2020. That hearing was continued as defense counsel was in trial in another county. Defense counsel informed the court it was not necessary to bring defendant into the courtroom regarding the continuance, as this was an SVP case, and thus, there "isn't a time issue." The hearing was continued to March 27, 2020. It then appears the matter was continued because of the coronavirus disease (COVID-19) court closures.[6]

The matter was back on calendar on June 8, 2020. Defense counsel requested a continuance to August 2020, because of an ongoing trial in another county that had also been continued because of COVID-19 court closures. The People objected to that date, noting the issue in this case was related to the failure to bring the case to trial and defendant had been in county jail awaiting the *Marsden* hearing for months and therefore not receiving any treatment or programming. The trial court set the *Marsden* hearing for June 12, 2020.

Defendant's *Marsden* motion was heard on June 12, 2020. After considering defendant's complaints that defense counsel had failed to protect his due process right to a timely trial and failed to make a motion to dismiss based on the violation of that right and defense counsel's responses,[7] the court found no breakdown in the attorney-client

---

[6]     Judicial Council of California Statewide Order
<https://newsroom.courts.ca.gov/sites/default/files/newsroom/2020-
09/Statewide%20Order%20by%20the%20Chief%20Justice-
Chair%20of%20the%20Judicial%20Council%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.pdf> (as of Aug. 10, 2022),
archived at <https://perma.cc/ZN5Q-JNRX>.

[7]     Defendant's complaints and counsel's responses in the *Marsden* motions are set
forth in greater detail in the Discussion section of this opinion.

8

relationship such that it would be impossible for counsel to represent defendant. Accordingly, the court denied the *Marsden* motion. The matter was set for trial on August 26, 2020, based on both defense counsel's and the People's earliest availability.

Defense counsel requested another continuance in August 2020, based on their expert witness needing additional time. The People also noted they were entitled to discovery of that report and additional time after receiving it. The court found good cause to continue the matter to September 30, 2020. Defendant again told the court he had a conflict with counsel, he did not trust defense counsel, and the relationship was irreparable. He wanted another hearing on the issue but stated he did not want a *Marsden* hearing. The trial court declined to set a hearing on the alleged conflict.

In September 2020, defense counsel requested another continuance, this time based on the defense expert informing defense counsel she could not assist the defense, necessitating a change in trial strategy. In addition, defense counsel was waiting for additional updated records from the state hospital. Defense counsel requested a continuance to October 26, 2020. Defendant objected to the continuance. Defendant again stated he wanted substitute counsel and that he had not been allowed to make his claim at the earlier *Marsden* hearing. The trial court denied the request for a *Marsden* hearing based on the lack of any new information.

At the October 22, 2020 trial readiness conference, defense counsel requested another continuance. Counsel indicated they had numerous new records to review and needed time to prepare an alternate defense strategy based on their expert's resignation. Defendant objected to the continuance and again stated he and defense counsel had a conflict. Defendant claimed there were new circumstances, so the court set the matter for another *Marsden* hearing.

The *Marsden* hearing was held on October 26, 2020. After determining defendant's claims had been adjudicated at the prior *Marsden* hearing, the court denied the motion.

Following the second *Marsden* hearing, defense counsel requested a continuance of the trial date to allow him time to review approximately 1,000 pages of new material provided by the prosecution. He stated although he had interviewed witnesses and prepared the defense, the materials were relevant to the defense and had to be reviewed to provide defendant effective assistance of counsel. Defendant objected to this continuance. The trial court granted the continuance to December 10, 2020.

Between the October 2020 *Marsden* hearing and March 2021 trial date, the trial court continued the matter two more times. The first continuance was due to courthouse administrative error and COVID-19 scheduling complications. Defendant objected to this continuance. There was no reason stated for the second continuance.

Prior to the March 2021 trial date, defense counsel filed a motion for continuance asserting defendant was entitled to a *Butler* hearing to determine whether his due process timely trial rights had been violated, potentially resulting in a dismissal of the SVP proceedings, obviating the need for a trial. The trial court denied the motion concluding that to delay the trial further "to contemplate the filing of a motion decrying delays in getting the case to trial, seems a step in the wrong direction."

The matter came on for hearing on March 15, 2021. Defendant made a third *Marsden* motion. After considering defendant's assertion of a conflict based on the failure to file a motion to dismiss for violation of his timely trial right and counsel's response, including having sought a continuance to file a motion to dismiss and tactical reasons to "age a case," the trial court found defense counsel was providing "constitutionally adequate counsel" and denied the *Marsden* motion.

Defendant waived jury trial and a court trial was set for March 18, 2021. After considering the evidence, the court noted that both experts found defendant's case was unique and neither doctor could say defendant would not succeed if he were released. Based on the testimony of the doctors and the court's own interactions with defendant, the court believed there was a prospect that at some later date, in the not too distant

10

future, defendant would be able to be released under controlled supervision. Nonetheless, the court found the evidence undisputed that defendant suffered from various diagnosed mental illnesses, had committed a sexually violent offense, and had previously been determined to be a mentally disordered offender. The court concluded as a result of the diagnosed mental disorders and his criminal history, defendant was an SVP, and it was necessary to confine him in a secure facility. The trial court ordered defendant committed for an indeterminate period to the State Department of State Hospitals for appropriate treatment and confinement.

Defendant timely appeals this commitment order.

DISCUSSION

I

*No Abuse Of Discretion Denying Marsden Motions*

Defendant contends the trial court abused its discretion by denying his *Marsden* motions. Specifically, he contends the attorney-client relationship had irretrievably broken down and he had lost faith and trust in his counsel. The People counter there was no abuse of discretion, as the breakdown in the attorney-client relationship appeared to be a result of defendant actively undermining the relationship in pursuit of his goal of having a *Butler/Vasquez* motion filed.

Defendant's first *Marsden* motion was heard on June 12, 2020. Defendant advised the trial court he had been a probable cause detainee for 11 years, during which time defense counsel had failed to move the matter to trial to protect his right to a timely trial as defined in *Vasquez* and *Litmon*, and failed to make a motion to dismiss based on the violation of his timely trial right. Defendant also claimed counsel had failed to object to the original probable cause hearing in 2009. Based on these failures, defendant alleged there was an actual conflict between himself and defense counsel.

In response, defense counsel delineated his experience and efforts representing defendant. Counsel reported defendant had repeatedly told counsel and the defense

11

investigator that he did not want to go to trial, but rather wanted to get assistance through the mental health process of the SVP law and available treatment programs. Then, in 2018, following the publication of *Vasquez*, defendant changed his position and started demanding trial. Also at that time, defense counsel and the defense investigator made numerous attempts to see defendant and defendant refused to meet with them to discuss trial tactics, issues, or witnesses. In addition, defendant had 27 disciplinary violations in 2019 alone, including violent conduct toward staff members and narcotics possession in the institution. Counsel had obtained a number of independent psychiatric evaluations of defendant and each evaluator concluded defendant met the criteria of an SVP. Thus, counsel opined no reasonable juror or trier of fact would free defendant based on his history. Counsel also noted there had been a trial date set when the COVID-19 pandemic occurred, and all dates were postponed and continued. When defendant finally met with counsel, he told counsel he did not want to make a *Marsden* motion but wanted to take advantage of the "new" law, as stated in *Vasquez*. Counsel noted that there was a widespread belief in the state hospital that if one had not gone to trial in the last few years, one would be released.

Defendant denied defense counsel's assertions and continued to claim there had been a breakdown in the relationship. He stated there had been over 80 continuances since 2009, he had no knowledge of those continuances, and he had been asking for trial since 2015. He also alleged counsel was ineffective, he wanted to assert his right to a timely trial under *Vasquez* and *Litmon*, and he wanted to file a motion to dismiss. He also denied that he had refused to meet with defense counsel or the defense investigator.

Defense counsel answered that his office had notified defendant of each continuance and the investigator spoke to defendant approximately once a month to update him on the status of the case. Until 2018, in every conversation with the investigator, defendant had told the investigator he did not want to go to trial, he wanted to complete additional institutional programming, and he had other legal issues. Defense

12

counsel opined that the difficulties in the relationship with defendant started with the publication of the *Vasquez* case, at which point defendant started to try to build a conflict to support his claim under *Vasquez*. Defense counsel also indicated he was ready to proceed to trial. Although meetings with defendant would be helpful, he could be ready for trial at the next available date; whereas it would take new counsel years to get ready for trial given the work, defense investigators, and experts necessary to be ready.

The trial court found defense counsel truthful and disbelieved defendant's claims. The court noted defendant had a propensity to misstate facts and concluded defendant was singularly focused on removing defense counsel irrespective of the circumstances, even if such removal was counterproductive to obtaining a timely trial. The court found no deficiency or inadequacy in counsel's representation of defendant. Although the court was concerned about defendant's willingness to work with counsel, the court found no breakdown in the relationship such that it would be impossible for counsel to represent defendant. The court concluded defendant could work with defense counsel but was choosing not to as a cover to remove defense counsel, even though that removal would delay trial. The court also found defense counsel wanted to continue to represent defendant and believed he could properly do so. Accordingly, the court denied the *Marsden* motion.

Defendant's second *Marsden* motion was heard in October 2020. Defendant alleged he had been in the Sacramento County jail since March 11, 2020, and defense counsel had abandoned him with no contact, visits, e-mails, or phone calls, and there had been multiple continuances. Upon the trial court's questioning, defense counsel indicated these claims had been discussed at length at the prior *Marsden* hearing. Concluding defendant did not raise any new claims, the trial court denied the motion.

Defendant made a third *Marsden* motion in March 2021. Defendant asserted he had not had a preliminary hearing because defense counsel had waived his probable cause hearing, significant amounts of inadmissible hearsay testimony were used in his

13

evaluations, and his attorney had a conflict of interest in terms of filing a motion to dismiss under *Vasquez,* because it would implicate counsel's performance. Defense counsel explained the hearsay issues would be addressed in the motions in limine and the case had properly moved past the probable cause hearing. Defense counsel reiterated his experience and detailed the meetings he and his investigator had with defendant. He again noted defendant's significant history of disciplinary issues at the state hospital, including over 100 reports of behavioral aggression and drug use. No psychiatric expert had ever written a report favorable to the defense, rather each evaluator had found defendant met the criteria for being an SVP. There were no expert witnesses or evidence favorable to defendant. The only potentially favorable witness was defendant's wife. She had credibility and judgment issues that would have made her ineffective as a witness on defendant's behalf. Defense counsel acknowledged the potential issue with the *Butler* motion, but noted that fellow practitioners had determined it did not create a conflict and that he had filed a motion for continuance to permit him time to file a *Butler* motion, which the court had denied. Defense counsel also explained there were tactical reasons to "age a case," such as the effect age has in reducing recidivism, and the difference in status and available programs between a person awaiting their SVP trial and one who has a lifetime commitment as an SVP. He acknowledged defendant's fears and concerns but explained they were misdirected at him. Counsel had made tactical decisions, which combined with defendant's actions, had delayed the proceedings, but he was fighting hard to advocate for defendant. The trial court found defense counsel was providing constitutionally adequate assistance and denied the *Marsden* motion.

" 'A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " (*People v. Panah* (2005) 35 Cal.4th 395, 431.) It is the defendant's obligation to make " 'a sustained good faith effort to work out any disagreements with

14

counsel.' " (*People v. Clark* (2011) 52 Cal.4th 856, 913.) " '[T]he trial court need not conclude that an irreconcilable conflict exists if the defendant has not tried to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1192.)

A *Marsden* inquiry is adequate where, as here, the defendant is allowed to fully state his complaints and his attorney is asked in the defendant's presence to summarize his experience in criminal law and to address defendant's complaints. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1091.) " 'Tactical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ' " (*People v. Jackson* (2009) 45 Cal.4th 662, 688.) "[T]actical disagreements between a defendant and his attorney or a defendant's frustration with counsel are not sufficient cause for substitution of counsel." (*People v. Streeter* (2012) 54 Cal.4th 205, 231.) We review the denial of a *Marsden* motion for abuse of discretion. (*Id.* at p. 230.) "Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

The court gave defendant and defense counsel ample opportunity to be heard on the *Marsden* motions. Counsel confirmed he had met with defendant, regularly advised him of continuances and the status of the case, conducted an ongoing and thorough investigation, obtained numerous psychiatric evaluations of defendant, and assessed witnesses. The record shows for nine years there was no conflict or breakdown in the relationship between counsel and defendant, they were working cooperatively together with a shared strategy. As of April 2018, defendant had not requested a trial. Counsel made a tactical decision to "age" the case to improve defendant's commitment status, allow continued programming, and reduce defendant's recidivism risk factors. Defendant agreed with this strategy. There was evidence that as late as July 2018, defendant explicitly requested defense counsel not go to trial, as he was programming and hoping

for a better result at trial. From 2009 to 2018, nothing in the record suggests defendant was dissatisfied with counsel's representation or that there was any conflict between them.[8] Nor is there any indication defendant was concerned about his timely trial right, or that he wanted to take the matter to trial.

The record here reflects defendant did not begin to complain about counsel, delays in going to trial, and demanding a trial until October 2018, after the publication of *Vasquez*. Defendant's behavior in this regard was consistent with a belief held by many in the state hospital that creating a conflict with their attorney would result in a dismissal of their case. After the *Vasquez* decision, counsel and the defense investigator made numerous attempts to meet with defendant and he refused to see them. To the extent defendant subsequently changed his strategy and disagreed with counsel's tactical choices, that disagreement does not rise to the level of a substantial impairment of his right to effective assistance of counsel. (*People v. Roldan* (2005) 35 Cal.4th 646, 682, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Moreover, after having successfully worked with counsel for nine years, defendant attempted to create a conflict in the relationship between himself and counsel. A defendant cannot engineer a conflict and refuse to cooperate with appointed counsel, potentially hampering his defense, and then claim he is entitled to a substitute attorney, because counsel has been ineffective. (*Ibid.*)

At no point did defense counsel indicate he could not or would not effectively represent defendant. To the contrary, he continued to advocate for defendant, prepare a

---

**8** Defendant references a 2015 letter defendant wrote to counsel as demonstrative of defendant's complaints about counsel's representation. This letter references unsuccessful attempts at communicating with counsel, defendant's belief that the SVP petition was statutorily time-barred, and a request counsel forward materials related to that purportedly time-barred petition. It makes no mention of any claimed timely trial right violations, desire to take the matter to trial, dissatisfaction with counsel's representation, or an interest in substituting counsel.

defense, seek helpful experts, interview witnesses, and address defendant's ongoing disciplinary issues. After the publication of *Butler*, counsel sought a continuance to file a motion to dismiss under *Butler*. The record does not reflect an irreconcilable conflict or breakdown in the attorney-client relationship. Nor did defendant show that a failure to replace counsel would substantially impair his right to effective assistance of counsel. The trial court did not abuse its discretion in denying defendant's *Marsden* motions.

II

*Reversible Error In Denying The Motion For Continuance*

Defendant contends the trial court abused its discretion in denying his motion for a continuance to file a *Butler* dismissal motion. The People argue defendant did not establish good cause for the continuance and any error was harmless.

On March 11, 2021, four days before defendant's trial date, defense counsel filed a motion to continue under section 6603 on the ground defendant was entitled to a *Butler* hearing, which might render trial unnecessary. Defense counsel indicated he had determined it was in defendant's best interests that he file a motion to dismiss based on a different trial court judge's application of *Butler* in a different case. Defense counsel had reviewed that ruling, met with other defense attorneys to discuss the implications of the ruling, and spoken with a supervising district attorney who indicated the ruling would not be appealed. Accordingly, defense counsel concluded he was required to file a *Butler* motion to dismiss, as there was a high likelihood the motion would be successful, and defendant's case would be dismissed. Counsel also declared because of the high likelihood of success on the motion, it would be a waste of taxpayer resources to go to trial and an unnecessary health risk given COVID-19 levels to impanel a jury.

The trial court summarily denied the motion noting the previous 13 continuances of the trial date and that the parties had declared themselves ready for trial on March 1, 2021. The trial court concluded: "To yet again delay the trial of [defendant's] matter,

17

this time to contemplate the filing of a motion decrying delays in getting the case to trial, seems a step in the wrong direction."

A continuance of an SVP trial shall be granted only upon a showing of good cause. (§ 6603, subd. (c)(5).) Trial courts have wide discretion to determine whether such cause exists. (*People v. Doolin*, *supra*, 45 Cal.4th at p. 450.) "In making that determination, courts consider whether the moving party has acted diligently, the anticipated benefits of the continuance, the burden that the continuance would impose on witnesses, jurors, and the court, and whether a continuance will accomplish or hinder substantial justice." (*People v. Reed* (2018) 4 Cal.5th 989, 1004.) Where, as here, the trial court denies a motion for a continuance, "we review all circumstances relevant to the motion to determine whether the trial court's decision was so arbitrary as to deprive the movant of due process." (*Ibid.*) " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) A misapplication or misunderstanding of the law is an abuse of discretion. (*People v. C.S.A.* (2010) 181 Cal.App.4th 773, 778; *People v. Robarge* (1953) 41 Cal.2d 628, 633-634.) "Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*Doolin*, at p. 450.)

A consideration of all the circumstances present here demonstrates the trial court abused its discretion in denying the motion to continue to allow defense counsel time to file a motion to dismiss. In assessing whether there was good cause to grant the continuance, the trial court was required to consider defense counsel's diligence, the anticipated benefits and burdens of the continuance, and whether the continuance would accomplish or hinder substantial justice. The record does not reflect the trial court considered any of these factors. Rather, from the trial court's ruling, it appears the trial court misunderstood the applicable law and facts. Counsel was not seeking a continuance

18

to contemplate filing a motion. Counsel's declaration makes clear he had concluded it was in defendant's best interest to file a *Butler* motion and he was seeking a continuance to file the *Butler* motion. In addition, the trial court's ruling confuses the actual remedy for a *Butler* violation. The trial court's ruling suggests it believed that if the *Butler* motion were successful, the remedy would be for the matter to proceed to trial (see *Orozco v. Superior Court* (2004) 117 Cal.App.4th 170, 179); hence the illogic of continuing the matter to allow for the filing of a motion to "decry delays in getting the case to trial." However, *Butler* explicitly rejected that as the appropriate remedy for a due process violation of the right to a timely trial. The remedy for a *Butler* violation is dismissal of the case.

Moreover, it is not a "step in the wrong direction" to allow a defendant time to file a motion seeking dismissal of a case based on a due process violation. This is particularly true here where only one factor weighs potentially against granting the continuance.

Of the relevant factors, only counsel's diligence in pursuing dismissal might weigh against granting the motion. *Butler* was decided approximately six months before defense counsel made the motion to continue. Counsel offered no reason why he did not file the motion upon *Butler*'s publication or in the intervening months, but instead waited for a trial court ruling in another case. In addition, *Butler* did not create new law on the issue of an SVP detainee's due process right to a timely trial, but largely reiterated the standards as expressed in *Vasquez*, which was published years earlier. However, *Butler* added important authority in its conclusion that although defendant was charged with delays caused by defense counsel, where defense counsel ignores a defendant's repeated demands for a timely trial and waives time without defendant's authorization, those delays will be given diminished weight; and, where state actors were also responsible for that same period of delay, it was appropriate to charge the state with the greater blame for the delay.

19

Against that lack of diligence by counsel, however, the remaining factors weigh heavily in favor of granting the continuance. The anticipated benefit of a continuance was a dismissal of the commitment petition based on a due process violation of defendant's right to a timely trial. There were few witnesses in the case, no jurors had been impaneled, and the court had not previously noted any difficulties or burdens in continuing the SVP trial for any number of reasons.

Finally, a continuance would have permitted defendant the opportunity for a hearing to vindicate his due process right to a timely trial. This last factor weighs especially heavily in the balance of accomplishing substantial justice. Because the trial court misunderstood the applicable law and a consideration of all the circumstances indicates the court's decision denied defendant due process, we conclude the trial court abused its discretion in denying the motion for continuance.

To establish prejudice in the denial of a motion to continue, defendant must show that there was a reasonable probability that in the absence of error, a result more favorable to him would have ensued. (*People v. Villa* (2009) 178 Cal.App.4th 443, 453, citing *People v. Watson* (1956) 46 Cal.2d 818.) Defendant was detained for 11 years awaiting trial on the SVP petition. From 2009 to 2018, a great deal of the delay in the proceedings would likely be charged to defendant, as most of the continuances for the first nine years were at defense counsel's request and defendant apparently agreed to this strategy at least for a time; in addition, defendant had a number of institutional problems and intervening legal issues. However, there is no evidence in our record that defendant waived time or appeared at those hearings. Nor is there evidence in our record that the People objected to any continuances or that the trial court made findings of good cause to support all of those continuances. From 2018 through the date of trial, defendant consistently asserted his right to a timely trial and objected to continuances. Many of those delays appear supported by good cause, but some would likely also be charged to the state, such as difficulties with defense experts. (See *People v. Litmon*, *supra*, 162

20

Cal.App.4th at p. 403.) The record before us demonstrates a reasonable probability that defendant's motion to dismiss would have been granted.

Although we conclude there is a reasonable probability defendant would have obtained a better result had the motion to continue been granted and the motion to dismiss heard, we cannot make the ultimate determination on the merits of a motion to dismiss as the record before us is not fully developed. There are factual issues left unresolved because the trial court never considered a motion to dismiss. Our record on appeal is not complete as to: the reasons for many continuances; whether they were supported by good cause; which continuances, if any, defendant consented to and the length of delay attributable to continuances defendant consented to versus those he did not consent to; and whether the state or defendant should be charged with the delays, particularly as to those where there was no reason given for the continuance or the record suggests off the record conversations regarding the case. Relatedly, there is the factual issue as to whether the number of continuances necessitated by conflicts in defense counsel's schedule and the problems with defense experts represented a systemic breakdown to be charged to the state. In addition, there are disputes in the statements of counsel and defendant relative to: whether delays were caused by defendant refusing to meet with counsel; whether defendant consented to any continuances, authorized waivers of time, or expressed his desire to go to trial earlier in the proceedings; and, the sincerity of defendant's expressed desire to go to trial. Accordingly, we remand the matter to the trial court for the purpose of holding an evidentiary hearing on defendant's motion to dismiss for a timely trial violation.

## DISPOSITION

The order of commitment is conditionally reversed. The court shall allow the parties to file briefing and hold a hearing on a motion to dismiss the SVP commitment petition based on a violation of defendant's due process right to a timely trial. If the trial court grants the motion, the court shall vacate the order of commitment and order the case dismissed. If the trial court denies the motion to dismiss, the judgment shall be reinstated.

/s/
Robie, Acting P. J.

We concur:

/s/
Duarte, J.

/s/
Krause, J.